UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SHONNETTE BANKS, individually and on behalf of all others similarly situated, ) ) ) | |
| Plaintiff, ) | Case No. 20-cv-7030 |
| v. ) ) | Hon. John J. Tharp Jr. |
| MERIDIAN LODGING ASSOCIATES, LLP ) d/b/a HOMEWOOD SUITES BY HILTON, ) ) | |
| Defendant. ) | |

**DEFENDANT MERIDIAN LODGING ASSOCIATES, LLP'S ANSWER AND AFFIRMATIVE DEFENSES TO PLAINTIFF'S CLASS ACTION COMPLAINT**

NOW COMES Defendant, Meridian Lodging Associates, LLP ("Defendant"), by and through its attorneys, SmithAmundsen LLC, and for its Answer and Affirmative Defenses to Plaintiff's Class Action Complaint (the "Complaint"), Defendant states as follows:

1. Meridian is a part of the hotel industry, with locations throughout Illinois.

**ANSWER**: **Defendant denies the allegation in Paragraph 1.**

2. When employees first begin their jobs at Meridian, they are required to scan their fingerprint in its biometric time tracking system as a means of authentication, instead of using only key fobs or other identification cards.

**ANSWER**: **Defendant denies the allegations in Paragraph 2.**

3. While there are tremendous benefits to using biometric time clocks in the workplace, there are also serious risks. Unlike key fobs or identification cards—which can be changed or replaced if stolen or compromised—fingerprints are unique, permanent biometric identifiers associated with the employee. This exposes employees to serious and irreversible privacy risks. For example, if a fingerprint database is hacked, breached, or otherwise exposed, employees have no means by which to prevent identity theft and unauthorized tracking.

**ANSWER**: **Defendant admits only key fobs or identification cards can be changed and replaced. Defendant denies having knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations in Paragraph 3 and therefore neither admits nor denies same but demands strict proof thereof.**

  4. Recognizing the need to protect its citizens from situations like these, Illinois enacted the Biometric Information Privacy Act, 740 ILCS 14/1, *et seq.* ("BIPA"), specifically to regulate companies that collect and store Illinois citizens' biometrics, such as fingerprints.

**ANSWER**: **Defendant denies having knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 4 and therefore neither admits nor denies same but demands strict proof thereof.**

  5. Despite this law, Meridian disregarded its employees' statutorily protected privacy rights and unlawfully collects, stores, and uses their biometric data in violation of the BIPA. Specifically, Meridian has violated (and continues to violate) the BIPA because it did not:

   1) Properly inform Plaintiff and the Class members in writing of the specific purpose and length of time for which their fingerprints were being collected, stored, and used, as required by the BIPA;

   2) Provide a publicly available retention schedule and guidelines for permanently destroying Plaintiff's and the Class's fingerprints, as required by the BIPA; nor

   3) Receive a written release from Plaintiff or the members of the Class to collect, capture, or otherwise obtain fingerprints, as required by the BIPA.

**ANSWER**: **Defendant denies the allegations in Paragraph 5.**

  6. Accordingly, this Complaint seeks an order: (i) declaring that Defendant's conduct violates the BIPA; (ii) requiring Defendant to cease the unlawful activities discussed herein; and (iii) awarding liquidated damages to Plaintiff and the proposed Class.

**ANSWER**: **Defendant denies the allegations in Paragraph 6, and further denies that Plaintiff or the putative class is entitled to any relief whatsoever from Defendant.**

## PARTIES

  7. Plaintiff is a natural person and citizen of the State of Illinois.

**ANSWER**: **Defendant denies having knowledge or information sufficient to form a belief as to the truth or falsity of the allegation in Paragraph 7 and therefore neither admits nor denies same but demands strict proof thereof.**

  8. Defendant Meridian is an Illinois corporation with its principal place of business in Aurora, Illinois.

**ANSWER:** **Defendant denies the allegation in Paragraph 8.**

## JURISDICTION AND VENUE

9. This Court has jurisdiction over Defendant pursuant to 735 ILCS 5/2-209 because Defendant conducts business transactions in Illinois and has committed tortious acts in Illinois.

**ANSWER**: **Defendant admits that this Court has jurisdiction over this action under 28 U.S.C. §§ 1332(a) and (d)(2), and 28 U.S.C. § 1441(a), as Defendant timely removed this action from the Circuit Court of Cook County, Illinois, Chancery Division. (*See* Dkt. #1.)**

10. Venue is proper in Cook. County because Defendant operates throughout this County and "resides" in Cook County within the meaning of 735 ILCS § 5/2-102(a).

**ANSWER**: **Defendant admits that venue is proper in this Court as it is the United States District Court for the district and division in which the original state court action was pending. 28 U.S.C. § 1441(a); *see also* 28 U.S.C. § 93(a)(1) (stating this Court encompasses Cook County).**

## FACTUAL BACKGROUND

**I. The Biometric Information Privacy Act.**

11. In the early 2000's, major national corporations started using Chicago and other locations in Illinois to test "new [consumer] applications of biometric-facilitated financial transactions, including finger-scan technologies at grocery stores, gas stations, and school cafeterias." 740 ILCS 14/5(b). Given its relative infancy, an overwhelming portion of the public became weary of this then-growing, yet unregulated technology. *See* 740 ILCS 14/5.

**ANSWER**: **Defendant denies having knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 11 and therefore neither admits nor denies same but demands strict proof thereof.**

12. In late 2007, a biometrics company called Pay By Touch—which provided major retailers throughout the State of Illinois with fingerprint scanners to facilitate consumer transactions—filed for bankruptcy. That bankruptcy was alarming to the Illinois Legislature because suddenly there was a serious risk that millions of fingerprint records—which, are unique biometric identifiers, can be linked to people's sensitive financial and personal data—could now be sold, distributed, or otherwise shared through the bankruptcy proceedings without adequate protections for Illinois citizens. The bankruptcy also highlighted the fact that most consumers who had used that company's fingerprint scanners were completely unaware that the scanners were not actually transmitting fingerprint data to the retailer who deployed the scanner, but rather to the now-bankrupt company, and that unique biometric identifiers could now be sold to unknown third parties.

**ANSWER**: **Defendant denies having knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations in Paragraph 12 and therefore neither admits nor denies same but demands strict proof thereof.**

13. Recognizing the "very serious need [for] protections for the citizens of Illinois when it [came to their] biometric information," Illinois enacted the BIPA in 2008. *See* Illinois House Transcript, 2008 Reg. Sess. No. 276; 740 ILCS 14/5.

**ANSWER**: **Defendant denies having knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 13 and therefore neither admits nor denies same but demands strict proof thereof.**

14. The BIPA is an informed consent statute which achieves its goal by making it unlawful for a company to, among other things, "collect, capture, purchase, receive through trade, or otherwise obtain a person's or a customer's biometric identifiers or biometric information, unless it first:

  1) informs the subject . . . in writing that a biometric identifier or biometric information is being collected or stored;
  2) informs the subject . . in writing of the specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored, and used; and
  3) receives a written release executed by the subject of the biometric identifier or biometric information.

740 ILCS 14/15(b).

**ANSWER**: **Defendant admits only that the allegations contained in Paragraph 14 purports to refer to language in 740 ILCS 14/15, but Defendant denies that the allegations, taken alone, completely and accurately describe the provisions of 740 ILCS 14/15 and the totality of the statute. Defendant denies any remaining allegations contained in Paragraph 14.**

15. BIPA specifically applies to employees who work in the State of Illinois. BIPA defines a "written release" specifically "in the context of employment [as] a release executed by an employee as a condition of employment." 740 ILCS 14/10.

**ANSWER**: **Defendant admits only that the allegations contained in Paragraph 15 purports to refer to language in 740 ILCS 14/10, but Defendant denies that the allegations, taken alone, completely and accurately describe the provisions of 740 ILCS 14/10 and the totality of the statute. Defendant denies any remaining allegations contained in Paragraph 15.**

16. Biometric identifiers include retina and iris scans, voiceprints, scans of hand and face geometry, and—most importantly here—fingerprints. *See* 740 ILCS 14/10. Biometric information is separately defined to include any information based on an individual's biometric identifier that is used to identify an individual. *See id.*

4

**ANSWER**: **Defendant admits only that the allegations contained in Paragraph 16 purports to refer to language in 740 ILCS 14/10, but Defendant denies that the allegations, taken alone, completely and accurately describe the provisions of 740 ILCS 14/10 and the totality of the statute. Defendant denies any remaining allegations contained in Paragraph 16.**

17. The BIPA also establishes standards for how employers must handle Illinois employees' biometric identifiers and biometric information. *See* 740 ILCS 14/15(c) - (d). For instance, the BIPA requires companies to develop and comply with a written policy—made available to the public—establishing a retention schedule and guidelines for permanently destroying biometric identifiers and biometric information when the initial purpose for collecting such identifiers or information has been satisfied or within three years of the individual's last interaction with the company, whichever occurs first. 740 ILCS 14/15(a).

**ANSWER**: **Defendant admits only that the allegations contained in Paragraph 17 purports to refer to language in 740 ILCS 14/15, but Defendant denies that the allegations, taken alone, completely and accurately describe the provisions of 740 ILCS 14/15 and the totality of the statute. Defendant denies any remaining allegations contained in Paragraph 17.**

18. Ultimately, the BIPA is simply an informed consent statute. Its narrowly tailored provisions place no absolute bar on the collection, sending, transmitting or communicating of biometric data. For example, the BIPA does not limit what kinds of biometric data may be collected, sent, transmitted, or stored. Nor does the BIPA limit to whom biometric data may be collected, sent, transmitted, or stored. The BIPA simply mandates that entities wishing to engage in that conduct must make proper disclosures and implement certain reasonable safeguards.

**ANSWER**: **Defendant admits only that the allegations contained in Paragraph 18 purports to paraphrase BIPA, but Defendant denies that the allegations, taken alone, completely and accurately describe BIPA and the applicable law. Defendant denies any remaining allegations contained in Paragraph 18.**

**II. Meridian Violates the Biometric Information Privacy Act.**

19. By the time the BIPA passed through the Illinois Legislature in mid-2008, many companies who had experimented with using biometric data as an authentication method stopped doing so, at least for a time. That is because Pay By Touch's bankruptcy, described in Section I above, was widely publicized and brought attention to consumers' discomfort with the use of their biometric data.

**ANSWER**: **Defendant denies having knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations in Paragraph 19 and therefore neither admits nor denies same but demands strict proof thereof.**

20. Unfortunately, Meridian failed to take note of the passage of the BIPA. Meridian continued to collect, store, and use its employees' biometric data in violation of the BIPA.

5

**ANSWER**: **Defendant denies the allegations in Paragraph 20.**

21. Specifically, when employees worked at Meridian, they are required to have their fingerprints scanned in order to enroll them in its fingerprint database.

**ANSWER**: **Defendant denies the allegations in Paragraph 21.**

22. Meridian uses an employee time tracking system that requires employees to use their fingerprints as a means of authentication. Unlike a traditional timeclock, employees have to use their fingerprint to "punch" in to or out of work.

**ANSWER**: **Defendant denies the allegations in Paragraph 22.**

23. Meridian failed to inform its employees of the complete purposes for which it collects their sensitive biometric data or to whom the data is disclosed, if at all.

**ANSWER**: **Defendant denies the allegations in Paragraph 23.**

24. Meridian similarly failed to provide its employees with a written, publicly available policy identifying its retention schedule, and guidelines for permanently destroying its employees' fingerprints when the initial purpose for collecting or obtaining their fingerprints is no longer relevant, as required by the BIPA. An employee who leaves the company does so without any knowledge of when their biometric identifiers will be removed from Meridian databases—or if they ever will be.

**ANSWER**: **Defendant denies the allegations in Paragraph 24.**

25. The Pay By Touch bankruptcy that catalyzed the passage of the BIPA highlights why conduct such as Meridian's —whose employees are aware that they are providing biometric identifiers but are not aware of to whom or the full extent of the reasons they are doing so—is so dangerous. That bankruptcy spurred Illinois citizens and legislators to realize a critical point: it is crucial for people to understand when providing biometric data who exactly is collecting it, who it will be transmitted to, for what purposes, and for how long. But Meridian disregards these obligations, and instead unlawfully collects, stores, and uses its employees' biometric identifiers and information without proper consent.

**ANSWER**: **Defendant denies the allegations in Paragraph 25 that "Meridian disregards these obligations, and instead unlawfully collects, stores, and uses its employees' biometric identifiers and information without proper consent," and denies any suggestion that Meridian's conduct is "dangerous." Defendant denies having knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations in Paragraph 25 and therefore neither admits nor denies same but demands strict proof thereof.**

26. Ultimately, Meridian disregards its employees' statutorily protected privacy rights by violating the BIPA.

**ANSWER**: **Defendant denies the allegations in Paragraph 26.**

## FACTS SPECIFIC TO PLAINTIFF

27. Plaintiff worked for Meridian in Illinois through 2019.

**ANSWER**: **Defendant admits the allegation in Paragraph 27.**

28. As an employee, Meridian required Plaintiff to scan Plaintiff's fingerprint so that it could use it as an authentication method to track time. Meridian subsequently stored Plaintiff's fingerprint data in its databases.

**ANSWER**: **Defendant denies the allegations in Paragraph 28.**

29. Each time Plaintiff began and ended a workday, Meridian required a scan of Plaintiffs fingerprints.

**ANSWER**: **Defendant denies the allegations in Paragraph 29.**

30. Meridian never informed Plaintiff of the specific limited purposes or length of time for which it collected, stored, or used fingerprints.

**ANSWER**: **Defendant denies the allegations in Paragraph 30.**

31. Similarly, Meridian never informed Plaintiff of any biometric data retention policy it developed, nor whether it will ever permanently delete fingerprints.

**ANSWER**: **Defendant denies the allegations in Paragraph 31.**

32. Plaintiff never signed a written release allowing Meridian to collect or store fingerprints.

**ANSWER**: **Defendant denies the allegations in Paragraph 32.**

33. Plaintiff has continuously and repeatedly been exposed to the risks and harmful conditions created by Meridian violations of the BIPA alleged herein.

**ANSWER**: **Defendant denies the allegations in Paragraph 33.**

34. Plaintiff now seeks liquidated damages under BIPA as compensation for the injuries Meridian has caused.

**ANSWER**: **Defendant admits that Plaintiff is seeking liquidated damages under BIPA, but Defendant denies that Plaintiff or the putative class is entitled to the relief requested in Paragraph 34, or any relief whatsoever from Defendant.**

## CLASS ALLEGATIONS

35. **Class Definition**: Plaintiff brings this action pursuant to 735 ILCS 5/2-801 on behalf of Plaintiff and a Class of similarly situated individuals, defined as follows:

> All residents of the State of Illinois who had their fingerprints collected, captured, received, otherwise obtained, or disclosed by Meridian while residing in Illinois.

The following people are excluded from the Class: (1) any Judge presiding over this action and members of their families; (2) Meridian, Meridian's subsidiaries, parents, successors, predecessors, and any entity in which the Defendant or its parents have a controlling interest and its current or former officers and directors; (3) persons who properly execute and file a timely request for exclusion from the Class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiff's counsel and Defendant's counsel; and (6) the legal representatives, successors, and assigns of any such excluded persons.

**ANSWER**: **Defendant admits only that Plaintiff purports to bring this action as a class action on behalf of a putative class. Defendant denies that this action may be maintained as a class action, denies that Defendant is liable to Plaintiff or any other member of the purported class, denies that the class can be certified, and denies all remaining allegations of Paragraph 35.**

36. **Numerosity**: The exact number of Class members is unknown to Plaintiff at this time, but it is clear that individual joinder is impracticable. Meridian has collected, captured, received, or otherwise obtained biometric identifiers or biometric information from at least hundreds of employees who fall into the definition of the Class. Ultimately, the Class members will be easily identified through Defendant's records.

**ANSWER**: **Defendant denies that this action may be maintained as a class action, denies that Defendant is liable to Plaintiff or any other member of the purported class, and denies that the class can be certified. Answering further, Defendant denies that the numbers of the putative class can be ascertained through its records, and denies all remaining allegations of Paragraph 36.**

37. **Commonality and Predominance**: There are many questions of law and fact common to the claims of Plaintiff and the Class, and those questions predominate over any questions that may affect individual members of the Class. Common questions for the Class include, but are not necessarily limited to the following:

> a) whether Defendant collected, captured, or otherwise obtained Plaintiffs and the Class' biometric identifiers or biometric information;
>
> b) whether Defendant properly informed Plaintiff and the Class of its purposes for collecting, using, and storing their biometric identifiers or biometric information;

c) whether Defendant obtained a written release (as defined in 740 ILCS 14/10) to collect, use, and store Plaintiff and the Class' biometric identifiers or biometric information;

d) whether Defendant has sold, leased, traded, or otherwise profited from Plaintiff and the Class's biometric identifiers or biometric information;

e) whether Defendant developed a written policy, made available to the public, establishing a retention schedule and guidelines for permanently destroying biometric identifiers and biometric information when the initial purpose for collecting or obtaining such identifiers or information has been satisfied or within three years of their last interaction, whichever occurs first;

f) whether Defendant complies with any such written policy (if one exists); and

g) whether Defendant used Plaintiff and the Class' fingerprints to identify them.

**ANSWER**: **Defendant denies that this action may be maintained as a class action, denies that Defendant is liable to Plaintiff or any other member of the purported class, denies that the class can be certified, and denies all remaining allegations of Paragraph 37.**

38. **Adequate Representation**: Plaintiff will fairly and adequately represent and protect the interests of the Class and have retained counsel competent and experienced in complex litigation and class actions. Plaintiff have no interests antagonistic to those of the Class, and Defendant has no defenses unique to Plaintiff. Plaintiff and their counsel are committed to vigorously prosecuting this action on behalf of the members of the Class, and have the financial resources to do so. Neither Plaintiff nor their counsel have any interest adverse to those of the other members of the Class.

**ANSWER**: **Defendant denies having knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 38 and therefore neither admits nor denies same but demands strict proof thereof.**

39. **Appropriateness**: This class action is appropriate for certification because class proceedings are superior to all others available methods for the fair and efficient adjudication of this controversy and joinder of all members of the Class is impracticable. The damages suffered by the individual members of the Class are likely to have been small relative to the burden and expense of individual prosecution of the complex litigation necessitated by Meridian's wrongful conduct. Thus, it would be virtually impossible for the individual members of the Class to obtain effective relief, from Meridian's misconduct. Even if members of the Class could sustain such individual litigation, it would not be preferable to a class action because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in their Complaint. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court. Economies of time, effort, and expense will be fostered and uniformity of decisions will be ensured.

**ANSWER**: **Defendant denies that this action may be maintained as a class action, denies that Defendant is liable to Plaintiff or any other member of the purported class, denies that the class can be certified, and denies all remaining allegations of Paragraph 39.**

## CAUSE OF ACTION
### Violation of 740 ILCS 14/1, *et seq*.
### (On Behalf of Plaintiff and the Class)

40. Plaintiff incorporates the foregoing allegations as if fully set forth herein.

**ANSWER**: **Defendant restates and incorporates by reference the above Paragraphs as if fully set forth herein.**

41. The BIPA requires companies to obtain informed written consent from employees before acquiring their biometric data. Specifically, the BIPA makes it unlawful for any private entity to "collect, capture, purchase, receive through trade, or otherwise obtain a person's or a customer's biometric identifiers or biometric information, unless [the entity] first: (1) informs the subject . . , in writing that a biometric identifier or biometric information is being collected or stored; (2) informs the subject . . in writing of the specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored, and used; and (3) receives a written release executed by the subject of the biometric identifier or biometric information, ..," 740 ILCS 14/15(b) (emphasis added).

**ANSWER**: **Defendant admits only that the allegations contained in Paragraph 41 purports to refer to language in 740 ILCS 14/15, but Defendant denies that the allegations, taken alone, completely and accurately describe the provisions of 740 ILCS 14/15 and the totality of the statute. Defendant denies any remaining allegations contained in Paragraph 41.**

42. The BIPA also mandates that companies in possession of biometric data establish and maintain a satisfactory biometric data retention (and—importantly—deletion) policy. Specifically, those companies must: (i) make publicly available a written policy establishing a retention schedule and guidelines for permanent deletion of biometric data (*i.e*., when the employment relationship ends); and (ii) actually adhere to that retention schedule and actually delete the biometric information. *See* 740 ILCS 14/15(a).

**ANSWER**: **Defendant admits only that the allegations contained in Paragraph 42 purports to refer to language in 740 ILCS 14/15, but Defendant denies that the allegations, taken alone, completely and accurately describe the provisions of 740 ILCS 14/15 and the totality of the statute. Defendant denies any remaining allegations contained in Paragraph 42.**

43. Unfortunately, Meridian fails to comply with these BIPA mandates.

**ANSWER**: **Defendant denies the allegations in Paragraph 43.**

44. Meridian is a limited liability company and thus qualifies as a "private entity" under the BIPA. *See* 740 ILCS 14/10.

**ANSWER**: **Defendant admits that it meets the definition of a "private entity" as that term is defined in 740 ILCS 14/10.**

45. Plaintiff and the Class are individuals who had their "biometric identifiers" collected by Meridian (in the form of their fingerprints), as explained in detail in Section II. *See* 740 ILCS 14/10.

**ANSWER**: **Defendant denies the allegations in Paragraph 45.**

46. Plaintiff and the Class' biometric identifiers or information based on those biometric identifiers were used to identify them, constituting "biometric information" as defined by the BIPA. *See* 740 ILCS 14/10.

**ANSWER**: **Defendant denies the allegations in Paragraph 46.**

47. Meridian violated 740 ILCS 14/15(b)(3) by failing to obtain written releases from Plaintiff and the Class before it collected, used, and stored their biometric identifiers and biometric information.

**ANSWER**: **Defendant denies the allegations in Paragraph 47.**

48. Meridian violated 740 ILCS 14/15(b)(1) by failing to inform Plaintiff and the Class in writing that their biometric identifiers and biometric information were being collected and stored.

**ANSWER**: **Defendant denies the allegations in Paragraph 48.**

49. Meridian violated 740 ILCS 14/15(b)(2) by failing to inform Plaintiff and the Class in writing of the specific purpose and length of term for which their biometric identifiers or biometric information was being collected, stored, and used.

**ANSWER**: **Defendant denies the allegations in Paragraph 49.**

50. Meridian violated 740 ILCS 14/15(a) by failing to publicly provide a retention schedule or guideline for permanently destroying its employees' biometric identifiers and biometric information.

**ANSWER**: **Defendant denies the allegations in Paragraph 50.**

51. By collecting, storing, and using Plaintiffs and the Class' biometric identifiers and biometric information as described herein, Meridian violated Plaintiffs and the Class' rights to privacy in their, biometric identifiers or biometric information as set forth in the BIPA, 740 ILCS 14/1, *et seq*.

**ANSWER**:    **Defendant denies the allegations in Paragraph 51.**

52.    On behalf of themselves and the Class, Plaintiff seek: (1) injunctive and equitable relief as is necessary to protect the interests of the Plaintiff and the Class by requiring Defendant to comply with the BIPA' s requirements for the collection, storage, and use of biometric identifiers and biometric information as described herein; (2) liquidated damages for each of Defendant's violations of the BIPA pursuant to 740 ILCS 14/20; and (3) reasonable attorneys' fees and costs and expenses pursuant to 740 ILCS 14/20(3).

**ANSWER**:    **Defendant denies that Plaintiff or the putative class is entitled to the relief requested in Paragraph 52, or any relief whatsoever from Defendant.**

## AFFIRMATIVE DEFENSES

NOW COMES Defendant, Meridian Lodging Associates, LLP, by and through its attorneys, SmithAmundsen LLC, and for its Affirmative Defenses to Plaintiff's Class Action Complaint, Defendant states as follows:

### First Defense (No Violation)

Defendant does not collect, record, store, capture, purchase, receive through trade, or otherwise obtain any "biometric identifier" or "biometric information" as defined in BIPA, and therefore, BIPA does not require Defendant to make any written policy available, nor does it does require Defendant to inform Plaintiff and/or any putative class members of the purported class of the collection, storage, and use of biometric identifiers or information, and does not require Defendant to receive any written consent or release from Plaintiff and/or any putative class members.

### Second Defense (Consent)

Plaintiff and/or any putative class members provided consent, either implicitly or expressly, to the collection of biometric information.

### Third Defense (No Negligent, Intentional, or Reckless Conduct)

The claims of Plaintiff and/or any putative class members are barred in whole or in part because of Defendant's good faith, and the want of negligent, intentional or reckless conduct. To the extent BIPA applies to Defendant's conduct, Defendant relied in good faith upon a reasonable interpretation of BIPA's statutory language such that any alleged violation was not negligent, intentional, or reckless.

### Fourth Defense (Substantial Compliance)

To the extent BIPA applies to Defendant's conduct as alleged in the Complaint, Defendant substantially complied with the requirements of BIPA.

### Fifth Defense (Preempted by the Illinois Workers' Compensation Act)

The claims of Plaintiff and the putative class are preempted by the Illinois Worker's Compensation Act.

### Sixth Defense (Estoppel/Laches/Waiver/Unclean Hands)

The claims of Plaintiff and/or any putative class members, in whole or in part, by various equitable doctrines, including without limitation, the doctrines of estoppel, laches, waiver, and/or unclean hands.

### Seventh Defense (Statute of Limitations)

The claims of Plaintiff and/or any putative class members are barred, in whole or in part, by the applicable statute of limitations. *See*, *e.g.*, 735 ILCS 5/13-201 (providing for a one year limitations period for privacy causes of action).

### Eighth Defense (Violation of Due Process)

The individual and class claims for damages asserted in this case are barred in whole or in part by the Due Process Clause of the United States Constitution and/or the Constitution of the

State of Illinois. Plaintiff alleges that she and the putative class members she seeks to represent are entitled to recovery either $1,000 or $5,000 in statutory damages for each alleged violation of BIPA. The statutory damages potentially available under BIPA, as applied to Plaintiff's claims and allegations, are grossly excessive and disproportionate given that Plaintiff and the putative class members have not suffered any injury or harm to warrant such relief, and therefore any award of statutory damages to Plaintiff or putative class members would violate Defendant's due process rights.

### Ninth Defense (Failure to Join Required Party)

Plaintiff has failed to join an indispensable party to this litigation.

### Tenth Defense (Violation of the Dormant Commerce Clause)

The claims of Plaintiff and/or any putative class members are barred, in whole or in part, by the Dormant Commerce Clause of the United States Constitution, Art. I, § 8, cl. 3. To the extent BIPA applies to Defendant's conduct, it would run afoul to the "dormant" limitation on the authority of the Illinois legislature to enact legislation affecting interstate commerce.

### Eleventh Defense (Ratification and Acquiescence)

The claims of Plaintiff and/or any putative class members are barred, in whole or in part, by the doctrine of ratification and/or acquiescence because Plaintiff and/or any putative class members ratified or acquiesced to any conduct engaged in by Defendant.

### Twelfth Defense (Excessive Fine)

To the extent the Complaint seeks putative class damages, the aggregated statutory damages, if any, may constitute excessive fines in violation of the First, Eighth, and Fourteenth Amendments to the U.S. Constitution.

### Thirteenth Defense (Not Reasonable Estimate of Actual Damages)

The claims of Plaintiff and/or any putative class members are barred, in whole or in part, because the recovery requested is not a reasonable estimate of any actual damages because Plaintiff and the putative class members have not suffered any injury or incurred any harm to warrant such relief.

### Fourteenth Defense (Standing)

Plaintiff and/or any putative class members lack standing to seek the relief demanded because they have not suffered a sufficient injury-in-fact from the conduct alleged in the Complaint.

### Fifteenth Defense (Violation of the Illinois Constitution's Special Legislation Clause)

The claims of Plaintiff and/or any putative class members are barred, in whole or in part, by the Special Legislation Clause of the Illinois Constitution, art. IV, § 13.

### Reservation of Rights

Defendant expressly and specifically reserves the right to amend this Answer to add, delete, and/or modify defenses based upon legal theories, facts and circumstances that may or will be divulged through discovery and/or further legal analysis of Plaintiff's position in this litigation.

Dated: January 4, 2021               Respectfully Submitted,

                                     /s/ Eric L. Samore

                                     Eric L. Samore ARDC # 6181345
                                     Kathryn V. Long ARDC # 6299363
                                     SMITHAMUNDSEN LLC
                                     150 N. Michigan Avenue, Suite 3300
                                     Chicago, Illinois 60601
                                     (312) 894-3200
                                     esamore@salawus.com
                                     klong@salawus.com

                                     *Counsel for Defendant Meridian Lodging Associates, Inc.*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on January 4, 2021, I electronically filed the foregoing with the Clerk of the Court for the United States District Court for the Northern District of Illinois by using the CM/ECF system, which sent notification of such filing to all CM/ECF participants.

/s/ Eric L. Samore